REBECCA ANN SPENCER, PLAINTIFF v. TERRY EDMUND SPENCER, DEFENDANT

No. COA02-334

(Filed 4 February 2003)

**1. Appeal and Error— appealability—failure to follow appellate rules—failure to timely enter into written contract for transcript**

The trial court did not err by denying plaintiff's motion to dismiss based on defendants' failure to follow the appellate rules, including the failure to enter into a written contract for the production of the transcript within fourteen days of the filing of defendant's notice of appeal in violation of N.C. R. App. P. 7, because: (1) defendant's actions in the present case constitute substantial compliance with the appellate rules when defendant made a request for the cassette tapes contemporaneously with his notice of appeal on 25 June 2001 and the tapes were not made available by the clerk's office per defendant's request until 13 September 2001; and (2) while defendant should have served something in the nature of written documentation of the audio tape request on the opposing party to inform her of the status of the appeal, failure to do so did not warrant dismissal.

**2. Child Support, Custody, and Visitation— child support—modification—payment of college education—equitable estoppel**

Although a trial court in a child support case could not modify a prior court order pursuant to N.C.G.S. § 1A-1, Rule 60(a) on

1

the ground that the modification as entered by the trial court was a change in the substantive provision of the original order which affected defendant father's substantive rights and the language in finding of fact number ten is not unequivocal in that it merely suggests that the parties should equally divide their daughter's college expenses, defendant is equitably estopped from refusing to honor the part of the agreement in which he agreed that he should divide the costs of his daughter's college education equally with plaintiff mother.

Appeal by plaintiff and defendant from order entered 18 December 2001 by Judge L. W. Payne in New Hanover County District Court. Heard in the Court of Appeals 14 November 2002.

*Law Office of Ellen Arnold Kiernan, by Ellen Arnold Kiernan, for plaintiff appellant-appellee.*

*R. Kent Harrell for defendant appellant-appellee.*

McCULLOUGH, Judge.

Plaintiff Rebecca Ann Carroll, formerly Spencer, and defendant Terry Edmund Spencer were married on 18 May 1974. During their marriage, their daughter, Stephanie Ann Spencer, was born on 14 June 1980. The parties separated on 30 December 1988. On 6 April 1989, the parties filed a consent judgment with the New Hanover County District Court, which was signed by the Honorable Charles E. Rice.

This consent judgment contained several findings of fact, conclusions of law, and a decree. It was the complete embodiment of the issues between the parties, including child custody and visitation, statutory and non-statutory child support, spousal support and equitable distribution. The first six paragraphs are the general introductory paragraphs. Paragraphs 8 through 22 deal with all the above subjects. Paragraph 10, the focus of at least part of this appeal, is one of the several paragraphs that deals with child support, agreed upon by the parties. These include:

8. That the defendant should pay to the Clerk of Superior Court reasonable child support for the support and maintenance of the minor child.

. . . .

10. That the parties should equally divide the cost for the college education of the daughter, STEPHANIE ANN SPENCER, including, but not limited to tuition, books, fees, room and board, clothing, transportation and other reasonable living expenses.

11. That the defendant shall maintain a policy of insurance providing coverage on his life in the sum of at least $100,000 naming the parties' child as beneficiary thereof. Said insurance shall be carried until husband's child support obligation shall cease.

. . . .

19. Husband shall keep his present medical insurance on the minor child as long as his duty to support the minor child is in force.

Under the conclusions of law, the issue of child support is noted in Conclusion of Law No. 3, which simply states: "That the defendant shall provide reasonable support for the minor child." However, in the decree, the trial court orders:

2. That the defendant shall pay through the Clerk of Superior Court of New Hanover County the sum of One Hundred, Fifteen Dollars ($115.00) per week for the support and maintenance of the minor child and shall continue to do so until the minor child reaches eighteen (18) years of age, graduates from high school or otherwise becomes emanicpated. [sic]

3. That the defendant shall further keep the minor child on his present medical insurance and keep a $100,000 life insurance policy in force and effect with the minor child as the beneficiary until his obligation to provide support to said minor child has ended.

The provisions of paragraph 10 are notably missing from the decree even though the other child support provisions were included.

While the parties made other changes to the consent judgment, including a 3 January 1992 order for a change of language (involving a different section) and a 3 July 1998 dismissal of the statutory child support obligations under paragraphs 8 of the findings of fact and 2 of the decree after the child had become emancipated, this omission was never a problem until defendant ceased paying for college expenses. Eventually, plaintiff filed a motion pursuant to Rule 60(a) to correct the judgment on 12 January 2001. Her motion noted the

absence of paragraph 10 from the decretal portion of the consent judgment. Plaintiff alleged that:

> 5. Since she started college, Defendant has paid sums toward Stephanie's educational expenses. However, Defendant failed to pay his share of all enumerated expenses and refused demand to pay same. Defendant recently advised Plaintiff and Stephanie that he intended to cease making payments toward Stephanie's college expenses when Stephanie reached the age of twenty-one (21).

Plaintiff argued that the failure to restate defendant's obligation to pay the college expenses as set forth in paragraph 10 "was a clerical mistake arising from oversight or omission."

This matter was heard before the Honorable L. W. Payne in the New Hanover County District Court on 28 February 2001. In an order entered 26 March 2001, the trial court noted that plaintiff contended that paragraph 10 "constitutes a legally binding agreement that defendant pay half the enumerated college expenses and that the absence of similar language in the conclusions of law and decretal portions of the order is a clerical omission or oversight[.]" It also noted that defendant contended "that the word 'should' rather that [sic] 'will' or 'shall' is not a clear statement of intent and does not constitute a binding agreement." Ruling in favor of plaintiff and finding that such was an omission correctable by Rule 60(a), the trial court noted:

> 7. The Court notes in particular that paragraph 8 states that defendant "should pay . . . reasonable child support". It is clear that this was intended as a legally binding obligation, and this intent was incorporated by mandatory "shall" language in the conclusions and decretal portions of the order. This obligation was in fact enforced by contempt in earlier proceedings herein.

> 8. In the hearing before the undersigned neither party offered evidence. However, plaintiff's counsel asserted, and defendant's counsel concurred, that defendant has in fact paid half of the college expenses during Stephanie's first three years of college.

> 9. Taken in isolation the language "should equally divide the cost" in paragraph 10 is arguably ambiguous as to whether it imports a legal obligation or merely a moral directive. However, in the total context of the consent order, particularly considering

SPENCER v. SPENCER

[156 N.C. App. 1 (2003)]

the use of the word "should" in paragraph 8, it is clear to this Court that the intent of the parties was to enter into a legally binding agreement that they "shall" divide the college costs. The behavior of the parties subsequent to the entry of the order is consistent with this clear statement of intent.

10. The absence of language concerning college expenses in the conclusions of law and decretal portions of the order is a clerical oversight or omission which should be corrected by the Court.

Defendant appeals from this order.

Although the order was filed on 28 March 2001, defendant was not served with a copy until 25 June 2001. Defendant filed his notice of appeal (NOA) with the trial court on 25 June 2001. The events that follow are the subject of the cross-appeal by plaintiff.

On 2 July 2001 (7 days from NOA), defendant filed a Request for Duplicate Copy of Verbatim Audio Court Record. Before making his request, defendant's counsel had spoken with Julie R. Ryan, a Certified Court Reporter, about transcribing the tapes when he received them. Ms. Ryan was already doing transcription work for him, and agreed to transcribe the tapes from the 26 March 2001 hearing. These tapes were not made available to defendant until 13 September 2001 (80 days from NOA) and defendant picked up the same on 14 September 2001 (81 days from NOA). Between the time when the tapes were requested and received, defendant had intermittently checked with the clerk's office to determine whether the copies had been completed. Once received, defendant forwarded the tapes to Ms. Ryan for transcription.

On 19 September 2001 (86 days from NOA), plaintiff filed a motion to dismiss defendant's appeal on the basis that defendant had failed to comply with the Rules of Appellate Procedure. Shortly thereafter, defendant filed a reply on 27 September 2001 (94 days from NOA), which included a letter from Ms. Ryan, signed on 21 September 2001 (88 days from NOA), stating that the letter served as a contract between her and defendant to prepare the transcript from the 26 March 2001 hearing. On 9 October 2001 (106 days from NOA), Ms. Ryan certified the delivery of the transcript to defendant.

A hearing was held on 29 October 2001 on plaintiff's motion to dismiss with the Honorable L. W. Payne again presiding. In denying plaintiff's motion, the trial court entered its order on 18 December

2001, finding that defendant had substantially complied with the Rules of Appellate Procedure. Plaintiff cross-appeals from this order.

Defendant appeals from the 28 March 2001 order and assigns as error the trial court's (I) modification of a prior court order pursuant to Rule 60(a) on the ground that the modification as entered by the trial court was a change in the substantive provision of the original order which affected defendant's substantive rights and was therefore not permitted under Rule 60(a); (II) Finding of Fact No. 9 on the ground that there was insufficient evidence to support it; (III) Finding of Fact No. 10 on the ground that there was insufficient evidence to support it.

Plaintiff cross-appeals from the 18 December 2001 order and assigns as error the trial court's denial of its motion to dismiss defendant's appeal pursuant to Rules 7 and 11 of the Rules of Appellate Procedure on the basis that defendant failed (I) to enter into a written contract with the Court Reporter or transcriptionist within 14 days of the filing of his notice of appeal; (II) to serve a proposed record on appeal within a maximum of 35 days from the filing of his notice of appeal in the event that defendant did not order a transcript of the hearing from which defendant appeals as is required by Rule 11 of the Rules of Appellate Procedure; (III) to file a motion or obtain an extension of time in which to produce a transcript of the hearing within a maximum of 74 days after filing of his notice of appeal as is required by Rule 7; and (IV) to timely serve a proposed record on appeal as required by Rule 9 in the event that a transcript was deemed not required by the court to adequately review the trial court's proceedings.

I.

As plaintiff's appeal, if successful, could end the consideration of this matter, we deal with it first.

[1] Plaintiff contends that defendant committed a variety of violations of the North Carolina Rules of Appellate Procedure. First, that defendant failed to enter into a written contract for the production of the transcript within 14 days of the filing of his notice of appeal in violation of Rule 7. Plaintiff also points out that defendant failed to comply with any other provision of Rule 7. The next two are in the alternative. If a transcript was required, then defendant failed to produce and deliver it within 74 days of filing his notice of appeal. On the

SPENCER v. SPENCER

[156 N.C. App. 1 (2003)]

other hand, if a transcript was not necessary, then defendant failed to serve a proposed record on appeal within 35 days of filing his notice of appeal.

N.C.R. App. P. 7, in pertinent part, reads as follows:

(a) *Ordering the transcript.*

(1) *Civil cases. Within 14 days after filing the notice of appeal the appellant shall arrange for the transcription of the proceedings* or of such parts of the proceedings not already on file, as the appellant deems necessary, in accordance with these rules, and *shall provide the following information in writing: a designation of the parts of the proceedings to be transcribed; the name and address of the court reporter or other neutral person designated to prepare the transcript;* and, where portions of the proceedings have been designated to be transcribed, a statement of the issues the appellant intends to raise on appeal. *The appellant shall file the written documentation of this transcript arrangement with the clerk of the trial tribunal, and serve a copy of it upon all other parties of record, and upon the person designated to prepare the transcript.*

. . . .

(b) *Production and delivery of transcript.*

(1) In civil cases: from the date the requesting party serves the written documentation of the transcript arrangement on the person designated to prepare the transcript, *that person shall have 60 days to prepare and deliver the transcript.*

N.C.R. App. P. 7(a)(1) & (b)(1) (2002) (emphasis added).

N.C.R. App. P. 11, "Settling the record on appeal," in pertinent part, reads as follows:

(a) *By agreement.* Within 35 days after the reporter's or transcriptionist's certification of delivery of the transcript, if such was ordered . . . , or *35 days after filing of the notice of appeal if no transcript was ordered,* the parties may by agreement entered in the record on appeal settle a proposed record on appeal prepared by any party in accordance with Rule 9 as the record on appeal.

N.C.R. App. P. 11(a) (2002) (emphasis added).

Plaintiff notes for this Court that defendant's notice of appeal was filed on 25 June 2001. Accordingly, defendant was supposed to execute a written contract with a transcriptionist by 9 July 2001 if a transcript was necessary. Defendant did not do this until 21 September 2001. Nor did he file anything with the Clerk's office as further required by Rule 7.

When an appellant enters into and files a contract with a transcriptionist, it indicates to the appellee, through the operation of Rule 7 and Rule 11, whether the record on appeal shall be due 35 days after the notice of appeal, or a maximum of 74 days after the notice of appeal. Thus, plaintiff could have received a proposed record on appeal by a 30 July 2001 deadline based on the 35-day period. This did not occur. Nor did plaintiff receive a transcript by 7 September 2001, which marked the end of the maximum 74-day period.

It is clear that defendant has not complied with the facial requirements of Rule 7 and/or Rule 11. However, the fact that defendant had been in contact with Ms. Ryan, the transcriptionist, within the 14-day period after filing his notice of appeal bears upon the resolution of these issues. Thus, this issue turns on whether defendant "substantially complied" with the requirements of the Rules of Appellate Procedure.

Defendant contacted the transcriptionist before or contemporaneously with his filing of his notice of appeal, 25 June 2001. He requested the tapes from the clerk's office on 2 July 2001. The tapes were not made available to him until 13 September 2001. Defendant picked up the tapes on 14 September 2001, and immediately forwarded them to the transcriptionist. On 9 October 2001, the transcriptionist certified that the trial transcript had been produced and delivered to defendant.

This Court has held that when a litigant exercises "substantial compliance" with the appellate rules, the appeal may not be dismissed for a technical violation of the rules. *See Pollock v. Parnell,* 126 N.C. App. 358, 484 S.E.2d 864 (1997); *Anuforo v. Dennie,* 119 N.C. App. 359, 458 S.E.2d 523 (1995). On point is the *Pollock* decision. In that case, this Court stated:

> Rule 7 sets forth the appropriate procedure for filing a timely appeal in matters requiring transcription by a court reporter. . . .

> . . . .

The circumstances of this case fall between the parameters of Rule 7 and Rule 11. The trial of this case was heard in District Court. N.C.G.S. 7A-198 provides that electronic or other mechanical devices shall be used in district court when court reporters are not available. N.C.G.S. 7A-198(a) (1995). This has become the common practice in all district courts and was the practice employed in [this case]. In order to obtain a transcript of the proceeding, the audio tape must be transcribed. A court reporter's services are not required.

Here, the defendant contacted the district court prior to filing his notice of appeal and inquired as to the transcribing of the trial. The defendant also contacted the Administrative Office of the Courts and sought advice on how to comply with the time requirements of the appellate rules when appealing from the district court. Following the instruction of the Johnston County Clerk of Court, the defendant purchased copies of the audio cassette tapes recording the trial and arranged for an employee of the defendant's attorney to transcribe the tapes within 60 days. Consequently, the defendant did not contract with a court reporter and did not file a copy of a contract with a court reporter within ten days from his notice of appeal. *The transcript of the trial was delivered to the defendant on 20 June 1996, within sixty days of the defendant's delivery of the cassette tapes to the transcriptionist.* The defendant served the record on appeal on the plaintiff on 10 July 1996.

On 30 May 1996, thirty six days after the defendant filed his notice of appeal, the plaintiff moved to dismiss the defendant's appeal because it was not timely. The plaintiff argues that the defendant was bound by the time limit set in Rule 11, thirty five days, because the defendant did not file a copy of a written contract with a court reporter within ten days of his notice of appeal.

*Pollock*, 126 N.C. App. at 360-61, 484 S.E.2d at 865-66 (emphasis added). The *Pollock* Court concluded that the appellant's actions constituted "substantial compliance" with Rule 7. *Id.* at 362, 484 S.E.2d at 866.

Applying this case law, we hold that defendant's actions in the present case constitute "substantial compliance" with the appellate rules. Like the Court in *Pollock*, this case was in district court and was recorded on cassette tapes. Defendant made a request for these tapes contemporaneously with his notice of appeal, 7 days afterward.

However, these tapes were not made available by the clerk's office per defendant's request until 13 September. Our case law prevents a dismissal of an appeal based upon a violation of appellate rules caused by a delay by a court reporter, stating that, "[t]o hold otherwise would allow a delay by a court reporter, whether with or without good excuse, to determine the rights of litigants to appellate review." *Lockert v. Lockert*, 116 N.C. App. 73, 81, 446 S.E.2d 606, 610, *disc. review allowed and writ of supersedes allowed*, 338 N.C. 311, 450 S.E.2d 490 (1994). We hold that the same principle applies to a clerk's office in the delivery of audio recordings of proceedings in district court. When an appellant makes a proper request of the clerk's office, as in the present case, a dismissal based upon the delay of the same in delivering the tapes is untenable.

While it may be that defendant should have served something in the nature of written documentation of the audio tape request on the opposing party to inform them of the status of the appeal, failure to do so did not warrant dismissal. The trial court did not err in denying plaintiff's motion to dismiss, and thus we affirm.

II.

[2] Having held that defendant's appeal is properly before this Court, we address the merits of his appeal. Defendant's first assignment of error is that the trial court erred in modifying the existing judgment because it constituted a change in the substantive provisions which in turn affected his substantive rights.

This Court is of the opinion that our current case law allows for three potential theories upon which the trial court's ruling could be affirmed. We will address each of these below.

The first would be to allow this change under N.C. Gen. Stat. § 1A-1, Rule 60(a) (2001). Rule 60(a) provides a limited mechanism for trial courts to amend erroneous judgments. It states:

*Clerical mistakes.*—Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party and after such notice, if any, as the judge orders.

*Id.*

"While Rule 60[a] allows the trial court to correct clerical mistakes in its order, it does not grant the trial court the authority to

make substantive modifications to an entered judgment." *Food Service Specialists v. Atlas Restaurant Management,* 111 N.C. App. 257, 259, 431 S.E.2d 878, 879 (1993). "A change in an order is considered substantive and outside the boundaries of Rule 60(a) when it alters the effect of the original order." *Buncombe County ex rel. Andres v. Newburn,* 111 N.C. App. 822, 825, 433 S.E.2d 782, 784 (1993) [*disc. review denied,* 335 N.C. 236, 439 S.E.2d 143] (1993).

*Pratt v. Staton,* 147 N.C. App. 771, 774, 556 S.E.2d 621, 624 (2001). Trial courts "do not have the power under Rule 60(a) to affect the substantive rights of the parties or correct substantive errors in their decisions." *Hinson v. Hinson,* 78 N.C. App. 613, 615, 337 S.E.2d 663, 664 (1985), *disc. review denied,* 316 N.C. 377, 342 S.E.2d 895 (1986). "We have repeatedly rejected attempts to change the substantive provisions of judgments under the guise of clerical error." *Id.*

Recently, in *S.C. Dep't of Soc. Servs. v. Hamlett,* 142 N.C. App. 501, 543 S.E.2d 189 (2001), this Court addressed a similar issue. In that case, a party moved to have a North Carolina child support order, which reduced a party's child support obligation, clarified under Rule 60(a) by adding a phrase that would specifically nullify a previous judgment from South Carolina. *Id.* at 503, 543 S.E.2d at 190. Such language was required under South Carolina law for such a nullification. *Id.* The moving party contended that the intent of the North Carolina order was to modify and effectively nullify a previous South Carolina judgment. The trial court, pursuant to Rule 60(a), amended the language in the decretal portion of the order to reflect that the South Carolina order was "specifically nullified." The Court stated that the

> amendment, rather than merely correcting a clerical error, clearly and substantively altered its earlier order. Further, the change by the trial court prejudiced the rights of plaintiff to receive the amount of child support ordered by the South Carolina Court by effectively reducing the amount of that arrearage to zero.

*Id.* at 505, 543 S.E.2d at 191. Thus, the *Hamlett* Court held that "the trial court was without authority under Rule 60(a) to enter such an order." *Id.* at 506, 543 S.E.2d at 191-92. (The *Hamlett* Court relied on the *Hinson* case, which held that a similar change, which was touted as clerical, was clearly substantive because it changed the substantive effect of the order on the rights of the parties. *See also Buncombe County, ex. rel. Andres,* 111 N.C. App. at 827, 433 S.E.2d at 785;

*Vandooren v. Vandooren,* 27 N.C. App. 279, 281, 218 S.E.2d 715, 716-17 (1975)).

In the present case, as discussed earlier, the original consent judgment included in the findings of fact that "the parties *should equally divide the cost* for the college education of the daughter . . . ." (Emphasis added.) However, this language was not present in the conclusions of law or decretal portions of the judgment. Plaintiff made a Rule 60(a) motion to correct this alleged clerical error and insert language in the decretal portion to the effect that defendant *shall* divide the cost equally with plaintiff.

While the trial court's order is logically correct, the relief granted substantively affected the rights and duties of the parties, and was thus not available under Rule 60(a). The 6 April 1989 order, on its face, did not order defendant to equally share the cost of the daughter's college education. It merely stated that he should, and nothing more. It is conceivable that this language was inadvertently left out of the decretal portion, given the context noted by the trial court in its 18 December 2001 order. Nevertheless, the change is clearly substantive in that defendant is now required to do something he was previously not obligated to do. Therefore, it was beyond the authority of the trial court to amend the 6 April 1989 judgment pursuant to Rule 60(a).

The second and third methods come from another recent case of this Court, *Langston v. Johnson,* 142 N.C. App. 506, 543 S.E.2d 176 (2001). In that case, parties sought a divorce. After a hearing, the trial court filed a judgment on 6 June 1991 that included several findings of fact, including:

7. That there were two children, Tari Krystal Aquia Johnson, born November 20, 1974 and Charles Edward Johnson, Jr., born October 17, 1979, born of the marriage of . . . Plaintiff and Defendant.

8. That Plaintiff is granted sole physical custody of the children and Defendant is granted liberal visitation rights.

9. That both Plaintiff and Defendant are granted joint legal custody.

10. That Plaintiff is responsible for major medical for both children and Defendant will be responsible for amounts not covered.

11. That Defendant is responsible for life insurance for both children.

12. That both Plaintiff and Defendant are equally responsible for college tuition for both children.

13. That Defendant is to pay $340, monthly, in child support to Plaintiff.

*Langston,* 142 N.C. App. at 507, 543 S.E.2d at 177. In the decretal portion, however, the 6 June 1991 judgment only stated that the marital bonds were dissolved. *Id.*

The wife later filed a motion for modification of child support in 1997, and the trial court ordered:

1. That . . . [D]efendant shall forward to [P]laintiff an amount of $31.00. This amount constitutes [D]efendant's current child support obligation through October, 1997, when the minor child, Charles Edward Johnson, Jr., born October 17, 1979, shall reach majority.

. . . .

3. That . . . [D]efendant is only obligated to pay one-half of the tuition per the previous court order entered between the parties on June 6, 1991.

. . . .

7. That . . . [D]efendant shall reimburse . . . [P]laintiff for one-half of the daughter's Fall, 1997, tuition at North Carolina State University.

*Id.* at 507-08, 543 S.E.2d at 177. The next year, after a motion to show cause for failure to pay child support in violation of the original judgment by the wife and an order of the same by the trial court, a hearing was held on the issue of what the order actually required of the husband. The trial court found that the original judgment only ordered that the couple was divorced, and although it was mentioned in the findings of fact, "there was no valid order regarding child support." *Id.* at 508, 543 S.E.2d at 177. Thus, the wife's motion was dismissed.

On appeal, this Court held that:

Generally, a judgment is in a form that contains findings, conclusions, and a decree. The decretal portion of a judgment is that

portion which adjudicates the rights of the parties. *See* 46 Am. Jur. 2d *Judgments* § 99 (1994). The failure to follow this precise form, however, is not fatal to the judgment. *Id.* § 83. "The sufficiency of a writing claimed to be a judgment is to be tested by its substance rather than its form." *Id.*; *see In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (appellate court not bound by trial court's classification of matter as a conclusion of law or a finding of fact).

> In this case, the 6 June 1991 judgment contains an *unequivocal directive* that Defendant pay child support in the amount of $340.00 per month. Although this directive was not contained in the decretal portion of the judgment, it nonetheless constitutes a decree of the trial court. To hold otherwise would place form over substance, which this Court is not required to do.

*Id.* at 508-09, 543 S.E.2d at 178 (emphasis added).

Applied to the present case, if the language in Finding of Fact No. 10 qualified as an "unequivocal directive," then *Langston* would control and plaintiff would prevail. The language of Finding of Fact No. 10 is not unequivocal in that it merely suggests that the parties *should* equally divide the college expenses. Therefore, we cannot affirm the trial court's order on this basis.

This brings us to our final method under which to analyze the trial court's order. The concurring opinion in the *Langston* case noted that the doctrine of equitable estoppel provided an alternative ground for which to overturn the trial court's finding that there was no order as to child support:

> Where a party engages in positive acts that amount to ratification resulting in prejudice to an innocent party, the circumstances may give rise to estoppel. *Howard v. Boyce*, 254 N.C. 255, 265-66, 118 S.E.2d 897, 905 (1961). Further, " '[a] party who, with knowledge of the facts, accepts the benefits of a transaction, may not thereafter attack the validity of the transaction to the detriment of other parties who relied thereon.' " *Yarborough v. Yarborough*, 27 N.C. App. 100, 105-06, 218 S.E.2d 411, 415, *cert. denied*, 288 N.C. 734, 220 S.E.2d 353 (1975) (quoting 3 Strong's N.C. Index 2d *Estoppel* § 4)[.]

*Langston*, 142 N.C. App. at 509-10, 543 S.E.2d at 178. The concurrence cited the facts that both parties had recognized the original order to be one which dealt with child support and lived under it for seven

years and never objected to it or repudiated it, plus a later order recognized it as a valid child support order.

Applying the doctrine of equitable estoppel to the present case, we note that defendant has complied with the "suggestion" in finding of fact #10 for three years of the daughter's college career. It was only after those years did he repudiate the original order.

We cite with particular interest paragraph number five of the decretal portion of the order. It reads:

> 5. That the defendant shall be able to claim the minor child for Federal and State Income Tax purposes every other year beginning the year 1989, until he remarries [added by 3 January 1992 order,] and the plaintiff will sign whatever forms are necessary to enable him to claim this deduction.

The significance of this paragraph is in its tax implications. Once a minor has reached the age of majority or been otherwise emancipated, that minor cannot be claimed as a dependent unless certain conditions are met. When divorced parents are involved, the rules are more complex.

According to the IRS Code § 152, titled "Exemptions for Children of Divorced Parents," the dependency exemption goes to the "parent who has custody of the child for the greater part of the calendar year," unless there is a "multiple support agreement that allows the child to be claimed as a dependent by a taxpayer other than the custodial parent," or "the custodial parent releases his or her right to the child's dependency exemption to the noncustodial parent." Due to above paragraph number five, one of these two was done.

As for dependents who are beyond the age of 19, they may still be claimed if they are a "full-time student under age 24." IRS Code § 151. "[A] taxpayer's child who . . . was under age 24 and was a full-time student at a regular educational institution . . . may be claimed as a dependent (if the taxpayer satisfies the support test), regardless of the amount of the child's income." IRS Code § 151.

The IRS Code deals with the support required in § 152, which requires the person claiming the dependent to furnish more than half of the total support for that year or, as in the present case, when "(1) no one person provided over half of the support; (2) over half of the support was received from persons who each would have been entitled to claim the exemption had they contributed more than half

of the support; and (3) over 10 percent of the support was provided by the person claiming the exemption.

We assume that defendant has claimed the daughter as a dependent at least one of the three years she was in college and he contributed money for half of her expenses, as there is nothing in the record to the contrary. Thus, defendant accepted the benefits of the agreement as granted under paragraph 5. Plaintiff was unable to claim the child in the years that defendant did so and plaintiff signed the necessary forms to enable defendant to so claim the daughter as a dependent. Therefore, we hold that defendant is equitably estopped from refusing to honor the part of the agreement in which he agreed that he should divide the costs of the daughter's college education equally with plaintiff.

Accordingly, the order of the trial court is

Affirmed.

Judge TYSON concurs.

Judge WALKER concurs in this opinion prior to 31 December 2003.