KEITH COX AND LINDA COX, PLAINTIFFS v. BRUCE C. STEFFES, M.D. AND VILLAGE SURGICAL ASSOCIATES, P.A., DEFENDANTS

No. COA02-972

(Filed 18 November 2003)

### 1. Appeal and Error— technical violations—appeal not dismissed

An appeal was heard despite plaintiffs' failure to comply with all of the requirements of the Rules of Appellate Procedure concerning the transcript of proceedings and notice of appeal. Although plaintiff should have exercised greater care to comply with the Appellate Rules, there was no compelling reason to overturn the trial court's finding of substantial compliance.

### 2. Medical Malpractice— standard of care—motion for jnov— consideration of all evidence

The trial court erred by granting defendants' motion for judgment n.o.v. in a medical malpractice action. Although defendant contended that plaintiff's expert doctor was not competent to testify about the standard of care in Fayetteville, defendant's expert supplied evidence of a national standard of care, and the trial court was not limited to plaintiffs' evidence.

### 3. Civil Procedure— motion for new trial—failure to seek ruling

Defendants' failure to seek a ruling on their motion for a new trial resulted in the remand of a medical malpractice action for entry of judgment on a jury verdict for plaintiff.

Appeal by plaintiffs from order entered 23 October 2001 by Judge John R. Jolly, Jr. and appeal by defendants from order entered 20 February 2002 by Judge Gary E. Trawick in Robeson County Superior Court. Heard in the Court of Appeals 14 May 2003.

*The Law Offices of William S. Britt, by William S. Britt, for plaintiffs.*

*Harris, Creech, Ward and Blackerby, P.A., by Thomas E. Harris and W. Gregory Merritt, for defendants.*

GEER, Judge.

Plaintiffs Keith and Linda Cox appeal from the trial court's order granting defendants' motion for judgment notwithstanding the verdict. In setting aside the jury verdict in favor of plaintiffs, the trial court erred by considering only plaintiffs' evidence and not the entire body of evidence submitted to the jury. Based on our review of the record, we conclude that the jury was presented with sufficient evidence to support its verdict and, therefore, we reverse.

---

This medical malpractice case arose out of Mr. Cox's treatment for chronic gastroesophageal reflux and esophagitis. On 7 April 1994, defendant Bruce C. Steffes, M.D. performed a laparoscopic Nissen fundoplication procedure on Mr. Cox at the Cape Fear Valley Medical Center ("Cape Fear"). The purpose of the surgery was to eliminate the reflux of stomach acid from the stomach into the esophagus.

Shortly after the surgery, Mr. Cox began experiencing severe abdominal pain when eating or sipping water, nausea, sweating, an increased heart rate, and increased blood pressure on standing. He was readmitted to Cape Fear on 12 April and 18 April 1994 with no alleviation of his symptoms. By the time Mr. Cox was admitted at Duke University Medical Center on 10 May 1994, a month after the surgery, he had lost 30 pounds. At Duke, the surgeon first inserted a feeding tube and then later, once Mr. Cox was strong enough, performed corrective surgery.

This case was tried before a jury during the 30 July 2001 civil session of the Robeson County Superior Court with the Honorable John R. Jolly, Jr. presiding. At trial, plaintiffs relied upon the expert testimony of Dr. Joseph C. Donnelly, Jr., a physician board-certified in both general and thoracic surgery. Dr. Donnelly, who is now retired, estimated that he had performed between 50 to 75 (and maybe 100) Nissen fundoplication surgeries.

After conducting voir dire, defendants objected to Dr. Donnelly's testifying as to the standard of care on the grounds that he could not comply with the requirements of N.C. Gen. Stat. § 90-21.12 (2001) and Rule 702(b) of the Rules of Evidence. The trial judge overruled defendants' objection although he indicated that he would revisit his ruling at the directed verdict stage because of concern regarding whether plaintiffs' expert testimony met the requirements of Rule 702.

Defendants moved for a directed verdict at the close of plaintiffs' evidence. After again noting concerns about compliance with Rule 702(b), the trial court took the motion "under advisement" and announced that he would rule at the end of the case. He explained to plaintiffs, "I want to give you an opportunity to show your whole case and I want to hear their defense." Defendants then proceeded to present evidence, including the testimony of expert witness Dr. John McGuire.

Although defendants renewed their motion for a directed verdict at the close of all of the evidence, the trial court chose to defer ruling on that motion and submit the case to the jury. On 7 August 2001, the jury returned a verdict in favor of Mr. Cox in the amount of $300,000.00 and in favor of plaintiff Linda Cox for $75,000.00 for loss of consortium.

Defendants moved pursuant to Rules 50 and 59 for judgment notwithstanding the verdict ("JNOV") and in the alternative for a new trial, arguing primarily that plaintiffs' sole expert witness, Dr. Donnelly, was not qualified to testify as to the standard of care in Fayetteville or similar communities. The trial court granted defendants' JNOV motion in an order filed on 23 October 2001.

I

[1] As a preliminary matter, we address defendants' cross-appeal from the trial court's order filed 20 February 2002 denying their motion to dismiss plaintiffs' appeal and defendants' motion to dismiss

**COX v. STEFFES**

[161 N.C. App. 237 (2003)]

filed in this Court. We affirm the trial court's order and deny defendants' motion to dismiss.

Plaintiffs initially filed their malpractice claims in an action with file number 97 CVS 1138. After voluntarily dismissing that action, plaintiffs subsequently refiled their claims in this case with file number 99 CVS 2564.

Defendants served plaintiffs with a copy of the trial court's JNOV order on 22 October 2001. On 30 October 2001, plaintiffs served and filed a notice of appeal "from the Order of Judgment Notwithstanding the Verdict entered by Judge Jolly on the 12th day of October, 2001." Plaintiffs' notice of appeal inadvertently listed 99 CVS 1138 as the file number rather than 99 CVS 2564. On 3 January 2002, defendants moved to dismiss the appeal on the grounds that plaintiffs had failed to file a proper notice of appeal and had failed to comply with all of the requirements under Rule 7 of the Rules of Appellate Procedure regarding obtaining a transcription of the trial proceedings.

With respect to the transcription arrangements, the trial court found that on 5 November 2001, six days after the notice of appeal, plaintiffs sent a letter to the court reporter requesting certain portions of the transcript. The letter did not comply with Rule 7 because it did not contain a statement of the issues that plaintiffs intended to raise on appeal, it was not filed with the trial court, and it was not served upon opposing counsel. With respect to the statement of issues, we note that the notice of appeal in this case had already identified the sole issue that plaintiffs were addressing on appeal. The court reporter notified counsel for defendants of the transcript request in a letter dated 17 December 2001. It appears from the record that the court reporter delivered the requested portions of the transcript to plaintiffs within the time limitations specified by Rule 7. The court reporter did not, however, provide defense counsel with a copy at that time, did not certify to the clerk of court that the copies had been delivered, and did not send a copy of the certification to the Court of Appeals.

The trial court found with respect to the notice of appeal that plaintiffs' error was inadvertent and with respect to the transcript that plaintiffs were in "substantial compliance" with Rule 7 of the Rules of Appellate Procedure. The court ordered plaintiffs to file a corrected notice of appeal within two days of the court's entry of the order in open court with the filing to relate back to the original date. The court further ordered plaintiffs to comply strictly with

COX v. STEFFES

[161 N.C. App. 237 (2003)]

Rule 7 and to serve and file a new request to the court reporter for transcription of the proceedings. On 29 January 2002, plaintiffs filed a second notice of appeal using the correct file number. Defendants do not contend that plaintiffs have committed any violations of the Rules of Appellate Procedure following the trial court's 20 February 2002 order.

"This Court has held that when a litigant exercises 'substantial compliance' with the appellate rules, the appeal may not be dismissed for a technical violation of the rules." *Spencer v. Spencer*, 156 N.C. App. 1, 8, 575 S.E.2d 780, 785 (2003). In *Ferguson v. Williams*, 101 N.C. App. 265, 275, 399 S.E.2d 389, 395, *disc. review denied*, 328 N.C. 571, 403 S.E.2d 510 (1991), this Court stated:

> [D]efendants brought a motion to dismiss plaintiff's appeal pursuant to Rules 7 and 25 of the North Carolina Rules of Appellate Procedure. Rule 7(a)(1) requires an appellant in a civil case to make a formal request for a copy of the trial transcript within ten days of filing notice of appeal. In their motion, defendants asserted plaintiff failed to comply with this rule. Judge John held a hearing and denied defendants' motion, finding that plaintiff had "substantially complied" with the rule. We decline to disturb this finding on appeal.

Although plaintiffs' counsel should have exercised greater care to comply with the Appellate Rules, we, like the *Ferguson* Court, find no compelling reason to overturn the trial court's finding of substantial compliance in this case. *See also Pollock v. Parnell*, 126 N.C. App. 358, 361-62, 484 S.E.2d 864, 865-66 (1997) (appellant substantially complied with Rule 7 when he made a timely request for transcription even though he did not file a copy of the request with the trial court and when he obtained the transcript within 60 days).

With respect to the notice of appeal, we find that it was served and filed with the clerk's office within the required time limitations, but, due to a clerical error by plaintiffs' counsel as to the case number, was not filed in the proper folder. To the extent that this error casts any doubt on our jurisdiction, we exercise our discretion and grant *certiorari* to review plaintiffs' claims on their merits pursuant to N.C.R. App. P. 21. *See Anderson v. Hollifield*, 345 N.C. 480, 482, 480 S.E.2d 661, 663 (1997) ("Rule 21(a)(1) gives an appellate court the authority to review the merits of an appeal by certiorari even if the party has failed to file notice of appeal in a timely manner.").

II

**[2]** Plaintiffs' appeal presents the question whether the trial court properly granted defendants' motion for JNOV. The parties agree and the transcript of the hearing on defendants' motion indicates that the basis for the trial court's order was its belief that the testimony of Dr. Donnelly was incompetent and that without Dr. Donnelly's testimony, plaintiffs failed to present evidence sufficient to meet their burden of proof. While plaintiffs argue that the testimony of Dr. McGuire, offered by defendants, cured any inadequacies in plaintiffs' proof, the trial court apparently believed, and defendants contend on appeal, that the trial court was limited to considering only plaintiffs' evidence in deciding whether to set aside the jury's verdict. That approach was, however, incorrect.

In *Stallings v. Food Lion, Inc.*, 141 N.C. App. 135, 539 S.E.2d 331 (2000), this Court set out the proper procedure for considering a motion for JNOV in circumstances such as those of this case:

When a motion is made for directed verdict at the close of the plaintiff's evidence, the trial court may either rule on the motion or reserve its ruling on the motion. By offering evidence, however, a defendant waives its motion for directed verdict made at the close of plaintiff's evidence. Accordingly, if a defendant offers evidence after making a motion for directed verdict, "any subsequent ruling by the trial judge upon defendant's motion for directed verdict must be upon a renewal of the motion by the defendant at the close of all the evidence, *and the judge's ruling must be based upon the evidence of both plaintiff and defendant.*"

*Id.* at 136-37, 539 S.E.2d at 332 (emphasis added; citations omitted) (quoting *Overman v. Gibson Products Co.*, 30 N.C. App. 516, 520, 227 S.E.2d 159, 162 (1976)). Under *Stallings*, the trial court in this case was free to defer ruling on defendants' motion for a directed verdict made at the close of plaintiffs' evidence. When, however, defendants then chose to present evidence, they waived any argument that their motion for a directed verdict should have been granted and the trial court was then required to base its ruling on defendants' motion for JNOV "upon the evidence of both plaintiff[s] and defendant[s]." *Overman*, 30 N.C. App. at 520, 227 S.E.2d at 162.

In *Bishop v. Roanoke Chowan Hospital, Inc.*, 31 N.C. App. 383, 229 S.E.2d 313 (1976), this Court applied these principles in holding

that a JNOV motion should not have been granted when, as in this case, subsequent witnesses cured any deficiencies in plaintiff's expert witness' testimony. In *Bishop*, plaintiff's expert witness was allowed to answer, over defendants' objection, a hypothetical question that included facts that were not then in evidence. Although subsequent witnesses ultimately supplied the missing facts, the trial court granted defendants' motion for JNOV. In reversing that decision, this Court rejected defendants' contention—virtually identical to the argument made here—that the trial court's order was proper because the expert's testimony, critical to plaintiff's claim, was inadmissible. This Court stressed that in determining the correctness of a motion for JNOV, " '[a]ll relevant evidence admitted by the trial court, *whether competent or not*, must be accorded its full probative force . . . .' " *Id.* at 385, 229 S.E.2d at 314 (emphasis added; quoting *Dixon v. Edwards*, 265 N.C. 470, 476, 144 S.E.2d 408, 412-13 (1965)).

Applying *Stallings* and *Bishop* to this case, we note first that since defendants have not cross-assigned error to the trial court's decision to admit the testimony of Dr. Donnelly, the admissibility of that testimony is not before us. *See also Dixon*, 265 N.C. at 476, 144 S.E.2d at 413 (in reviewing a motion for judgment as of nonsuit, the Court was not required to determine the competency of the evidence submitted to the jury); *Bishop*, 31 N.C. App. at 385, 229 S.E.2d at 314 ("Nor do we, on this appeal, find it necessary to determine the competency of the testimony of the [expert]."). Instead, the question before this Court is whether the evidence submitted to the jury, when considered in its entirety and in the light most favorable to plaintiffs, was sufficient under N.C. Gen. Stat. § 90-21.12 for the jury to find that defendants' care of Mr. Cox "was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." *See Alexander v. Alexander*, 152 N.C. App. 169, 170, 567 S.E.2d 211, 213 (2002) (citation omitted) (on appeal, the standard of review for a JNOV is "whether the evidence was sufficient to go to the jury").

The standard is high for the party seeking a JNOV: *"the motion should be denied if there is more than a scintilla of evidence to support the plaintiff's prima facie case." Id.* (emphasis original). The evidence supporting plaintiffs' claims must be taken as true, all conflicts and inconsistencies in the evidence must be resolved in plain-

tiffs' favor, and plaintiffs must receive the benefit of every reasonable inference. *Id.* at 171, 567 S.E.2d at 213.

On appeal, defendants have questioned only Dr. Donnelly's ability to testify as to the standard of care in "the same or similar communities." Dr. Donnelly specifically testified that he was familiar with the standard of care for board-certified physicians such as Dr. Steffes practicing in Fayetteville or a similar community in 1994 with respect to post-operative care after a Nissen fundoplication procedure. As support for this assertion, Dr. Donnelly testified that he had, prior to trial, received written information regarding the Fayetteville area from plaintiffs' counsel and had reviewed it again prior to testifying before the jury. With respect to his knowledge of communities similar to Fayetteville, he explained that he was board-certified in general surgery (like Dr. Steffes) and had practiced at a Level 2 hospital in Reading, Pennsylvania. Dr. Donnelly expressed his belief that Cape Fear was also a Level 2 hospital; Dr. McGuire confirmed that fact. Dr. McGuire also confirmed that the standard of care at his Level 2 hospital in Asheville was the same as the standard of care at Cape Fear. In addition, Dr. Donnelly's and Dr. McGuire's testimony together supported the conclusion that the Reading hospital's size was comparable to that of Cape Fear. Dr. Donnelly also more specifically expressed his view that Reading was similar to Fayetteville with respect to board-certified physicians, sophisticated lab services, x-ray departments, anesthesia services, hospital certification, and access to specialists.

Equally importantly, Dr. McGuire testified that the standard of care at issue in this case was in fact the same across the nation. As to post-operative care, Dr. McGuire first testified, "I think it is universally accepted the standard of care." He then agreed more specifically that with respect to post-operative care "the standard of care applicable for that would be the same across the US in 1994 for any board-certified surgeon[.]"

Dr. Donnelly's and Dr. McGuire's testimony regarding Level 2 hospitals was sufficient to establish that Dr. Donnelly's knowledge of practices in Reading, Pennsylvania qualified him to testify as to the standard in communities similar to Fayetteville. In *Coffman v. W. Earl Roberson, M.D., P.A.*, 153 N.C. App. 618, 624-25, 571 S.E.2d 255, 259 (2002), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 111 (2003), this Court held that a doctor's testimony regarding standard of care was sufficient when the doctor testified generally that he was familiar with the standard of care in communities similar to Wilmington,

that he based his opinion on Internet research regarding the hospital, and that he knew the hospital was a sophisticated, training hospital. *See also Leatherwood v. Ehlinger*, 151 N.C. App. 15, 22-23, 564 S.E.2d 883, 888 (2002) (reversing directed verdict when plaintiffs' expert specifically testified that he had knowledge of the standards of care in Asheville and similar communities because of his practice in communities of a size similar to Asheville and because he had attended rounds as a medical student in the Asheville hospital at issue), *disc. review denied*, 357 N.C. 164, 580 S.E.2d 368 (2003).

Even if this evidence is disregarded, Dr. McGuire's testimony established that the standard of care with respect to post-operative care by board-certified general surgeons, under the circumstances of this case, is the same for all communities. This Court stated in *Haney v. Alexander*, 71 N.C. App. 731, 736, 323 S.E.2d 430, 434 (1984), *cert. denied*, 313 N.C. 329, 327 S.E.2d 889 (1985): "Where the standard of care is the same across the country, an expert witness familiar with that standard may testify despite his lack of familiarity with the defendant's community." Given Dr. McGuire's testimony, Dr. Donnelly's testimony, which defense counsel characterized on cross-examination as testimony regarding the national standard, was sufficient to support the jury's verdict. *See also Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 656-57, 535 S.E.2d 55, 67 (2000) (noting that this Court has rejected any argument that testimony regarding a nationwide standard is always insufficient under N.C. Gen. Stat. § 90-21.12), *disc. review denied*, 353 N.C. 370, 547 S.E.2d 2 (2001).

Defendants rely upon *Henry v. Southeastern OB-GYN Assoc., P.A.*, 145 N.C. App. 208, 550 S.E.2d 245, *aff'd per curiam*, 354 N.C. 570, 557 S.E.2d 530 (2001), for the proposition that the trial court erred in allowing plaintiff's expert to testify as to the national standard of care.[1] In *Henry*, however, "there [was] no evidence that the national standard of care is the standard practiced in Wilmington." *Id.* at 210, 550 S.E.2d at 247. Likewise, in the recent decision in *Smith v. Whitmer*, 159 N.C. App. 192, 197, 582 S.E.2d 669, 673 (2003), this Court affirmed a grant of summary judgment when plaintiff's expert witness could only testify to a national standard of care, but "there was no evidence that a national standard of care is the same standard

---

1. It is unclear whether *Henry* is controlling authority. In the Court of Appeals, there were three separate opinions, with one judge concurring only in the result and another judge dissenting. There was, therefore, no majority opinion. The Supreme Court's *per curiam* decision simply stated "[a]ffirmed" without specifying which opinion was the basis for that affirmance. 354 N.C. at 570, 557 S.E.2d at 530.

of care practiced in defendants' community." By contrast, in this case defendants' expert witness confirmed that the standard of care was "universally accepted" and "would be the same across the US in 1994 for any board-certified surgeon[.]" Dr. McGuire supplied the evidence lacking in *Henry* and *Smith*. We therefore reverse the trial court's order granting defendants' motion for JNOV.

**[3]** As a final matter, we note that defendants also moved pursuant to Rule 59 of the Rules of Civil Procedure for a new trial. Although the trial court indicated orally in the course of the hearing on defendants' post-trial motions that it was "not inclined" to grant defendants' motion for a conditional new trial, the record on appeal contains no order reflecting any decision by the court as to that motion.

Under Rule 50(c)(1) of the Rules of Civil Procedure, if a motion for JNOV is granted, "the court shall also rule on the motion for new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial." It was defendants' obligation to ensure that they obtained a ruling on their motion for a conditional new trial:

> A party gaining judgment notwithstanding the verdict should also ask for a ruling pursuant to G.S. 1A-1, Rule 50(c)(1), on the motion for a new trial if he wishes to allege any error in the trial or to preserve any question other than the sufficiency of the evidence for appellate review.

*Beal v. K. H. Stephenson Supply Co.*, 36 N.C. App. 505, 510, 244 S.E.2d 463, 466 (1978). Because defendants failed to seek a ruling on their motion for a new trial and did not make any cross-assignments of error as to the trial, we reverse and remand for entry of judgment on the verdict.

Reversed in part and remanded for entry of judgment on the verdict; affirmed in part.

Judges MARTIN and HUNTER concur.