RONALD CROCKER and PAULETTE CROCKER as Co-Administrators of the Estate of REAGAN ELIZABETH CROCKER, Plaintiffs,
v.
H. PETER ROETHLING, M.D. and WAYNE WOMEN'S CLINIC, P.A., Defendants.
No. COA06-802-2
Court of Appeals of North Carolina.
Filed July 3, 2007
This case not for publication
The McLeod Law Firm, P.A., by William W. Aycock, Jr., and Law Offices of Wade E. Byrd, P.A., by Wade E. Byrd, for plaintiff-appellants.
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Samuel G. Thompson and William H. Moss, for defendant-appellees.
BRYANT, Judge.
Ronald and Paulette Crocker (plaintiffs), as co-administrators of the estate of Reagan Elizabeth Crocker, appeal from an order entered 1 March 2006 granting summary judgment in favor of H. PeterRoethling, M.D., and Wayne Women's Clinic, P.A. (defendants). We affirm the order of the trial court.

Facts and Procedural History
Reagan Elizabeth Crocker was born to plaintiffs on 14 September 2001. Defendant Roethling, an obstetrician with defendant Wayne Women's Clinic, was Mrs. Crocker's doctor for the labor and delivery. During the delivery, Reagan suffered from shoulder dystocia, a condition in which Reagan's shoulder became lodged against the pelvis of her mother, inhibiting natural passage through the birth canal. Reagan had to be resuscitated upon delivery and suffered various injuries.
Reagan died on 28 September 2003 and plaintiffs filed a medical malpractice suit against defendants on 9 September 2004. Following depositions of both defendant Roethling and plaintiffs' medical expert, Dr. John P. Elliott, defendants filed a Motion for Summary Judgment and a supporting affidavit from defendant Roethling on 1 February 2006. On 10 February 2006, plaintiffs filed an opposing affidavit of their expert, Dr. Elliott. Defendant's Motion for Summary Judgment was heard on 13 February 2006 in Johnston County Superior Court, before the Honorable W. Russell Duke, Jr., Judge presiding. After hearing arguments and reviewing submissions from all counsel, the trial court excluded all testimony of plaintiffs' expert, Dr. Elliott, and granted summary judgment in favor of defendants. Plaintiffs appeal.
Under Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "The burden is upon the moving party to show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." McGuire v. Draughon, 170 N.C. App. 422, 424, 612 S.E.2d 428, 430 (2005) (citing Lowe v. Bradford, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982)). Once the moving party meets its burden, the nonmovant, in order to survive the summary judgment motion, must "produce a forecast of evidence demonstrating that the [nonmovant] will be able to make out at least a prima facie case at trial." Collingwood v. Gen. Elec. Real Estate Equities, Inc., 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted). "All facts asserted by the [nonmoving] party are taken as true and their inferences must be viewed in the light most favorable to that party." Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (internal citations omitted). On appeal, this Court reviews an order granting summary judgment de novo. McCutchen v. McCutchen, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006).
In their medical malpractice action, plaintiffs have the burden of showing "'(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries-suffered by the plaintiff[s] were proximately caused by such breach; and (4) the damages resulting to the plaintiff[s].'" Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp., 175 N.C. App. 474, 477, 624 S.E.2d 380, 383 (2006) (quoting Weatherford v. Glassman, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998)). Plaintiffs' required burden as to the applicable standard of care is established by N.C. Gen. Stat. § 90-21.12, which states:
In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.
N.C. Gen. Stat. § 90-21.12 (2005). Further, "plaintiff must establish the relevant standard of care through expert testimony." Smith v. Whitmer, 159 N.C. App. 192, 195, 582 S.E.2d 669, 672 (2003) (citation omitted).
This Court has recently held that:
In opposing a motion for summary judgment in a medical malpractice case, a plaintiff must demonstrate that his expert witness is competent to testify as an expert witness to establish the appropriate standard of care in the relevant community. In other words, in order to establish the relevant standard of care for a medical malpractice action, an expert witness must demonstrate that he is familiar with the standard of care in the community where the injury occurred, or the standard of care in similar communities. In the absence of such a showing, summary judgment is properly granted.
Purvis, 175 N.C. App. at 477-78, 624 S.E.2d at 384 (internal citations and quotations omitted). Additionally,
[w]hen determining whether an expert is familiar with the standard of care in the community where the injury occurred, "a court should consider whether an expert is familiar with a community that is similar to a defendant's community in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community."
Billings v. Rosenstein, 174 N.C. App. 191, 194, 619 S.E.2d 922, 924-25 (2005) (quoting Pitts v. Nash Day Hosp., Inc., 167 N.C. App. 194, 197, 605 S.E.2d 154, 156 (2004), aff'd per curiam, 359 N.C. 626, 614 S.E.2d 267 (2005)). Plaintiffs' expert must also be "familiar with the experience and training of the defendant" doctor. Purvis, 175 N.C. App. at 477, 624 S.E.2d at 384 (citations and quotations omitted).
In the instant case, defendants have argued that summary judgment was proper because plaintiffs failed to offer competent evidence of the standard of care and of proximate cause. Plaintiffs' expert, Dr. Elliott, states in his affidavit that he is "familiar with the prevailing standard of care for handling shoulder dystocia in the same or similar community to Goldsboro, North Carolina in 2001 . . . ." However, the record before this Court does not include sufficient facts tending to support Dr. Elliott's conclusion.
Dr. Elliott, in his affidavit, states: 3. I am familiar with the training, education and experience of Dr. Peter Roethlihg and have reviewed the transcript of Dr. Roethling's deposition wherein he discusses his training, education and experience and his practice in Goldsboro, North Carolina. . . .
4. I have reviewed information about the community of Goldsboro, North Carolina, Wayne County and Wayne Memorial Hospital for the period 2001 and am familiar with the size of the population, the level of care available at the hospital, the facilities and the number of health care providers for obstetrics. I am familiar with the prevailing standard of care for handling shoulder dystocia in the same or similar community to Goldsboro, North Carolina in 2001 by a physician with the same or similar training, education and experience as Dr. Roethling. . . .
Notwithstanding the foregoing, neither Dr. Elliott's affidavit nor the record before this Court includes sufficient facts, as opposed to conclusions, to support Dr. Elliott's statements that he is familiar with the standard of care applicable in communities similar to Goldsboro, North Carolina. "Although Dr. [Elliott] asserted that he was familiar with the applicable standard of care, his [affidavit and deposition] testimony is devoid of support for this assertion." Whitmer, 159 N.C. App. at 196, 582 S.E.2d at 672.
Plaintiffs cite to Cox v. Steffes, 161 N.C. App. 237, 587 S.E.2d 908 (2003), disc. review denied, 358 N.C. 233, 595 S.E.2d 148 (2004), in support of their argument that Dr. Elliott's knowledge of Goldsboro, North Carolina, and the medical facilities located there, was sufficient to qualify Dr. Elliott to testify to the relevant standard of care. In Steffes this Court held that Dr. Joseph C. Donnelly, Jr., the testifying expert, supported his assertion that he was familiar with the applicable standard of care by testifying "that he had, prior to trial, received written information regarding the Fayetteville area from plaintiffs' counsel and had reviewed it again prior to testifying before the jury." Id. at 244, 587 S.E.2d at 914. However, in Steffes, the evidence before the trial court also established that Fayetteville, North Carolina was a community similar to that in which Dr. Donnelly practiced (Reading, Pennsylvania) and thus he could testify to the standard of care applicable to Fayetteville, North Carolina:
With respect to his knowledge of communities similar to Fayetteville, he explained that he was board-certified in general surgery (like Dr. Steffes) and had practiced at a Level 2 hospital in Reading, Pennsylvania. Dr. Donnelly expressed his belief that Cape Fear was also a Level 2 hospital; Dr. McGuire confirmed that fact. Dr. McGuire also confirmed that the standard of care at his Level 2 hospital in Asheville was the same as the standard of care at Cape Fear. In addition, Dr. Donnelly's and Dr. McGuire's testimony together supported the conclusion that the Reading hospital's size was comparable to that of Cape Fear. Dr. Donnelly also more specifically expressed his view that Reading was similar to Fayetteville with respect to board-certified physicians, sophisticated lab services, x-ray departments, anesthesia services, hospital certification, and access to specialists.
Id.
In the instant case, there are no facts in evidence tending to establish that Goldsboro, North Carolina is a community similar to Phoenix, Arizona, the community in which Dr. Elliott has practiced. The only facts in the record as to Dr. Elliott's qualifications to give an opinion on the applicable standard of care in this case establish that he has practiced in much larger hospitals than that found in Goldsboro, North Carolina. Plaintiffs have thus not shown Dr. Elliott is familiar with a community that is similar to defendants' community in regard to physician skill and training, facilities, equipment, funding, and also the physical and financial environment of a particular medical community. See Whitmer, 159 N.C. App. at 197, 582 S.E.2d at 673 (holding where the testifying expert "provided no meaningful evidence to establish that Abingdon, Virginia, was similar to Tarboro or Rocky Mount, North Carolina[,]" the expert "failed to make the statutorily required connection to the community in which the alleged malpractice took place or to a similarly situated community.") As Dr. Elliott is plaintiffs' only expert regarding the applicable standard of care in this case, plaintiffs cannot meet their burden as set forth under N.C. Gen. Stat. § 90-21.12 and the trial court properly entered summary judgment in favor of defendants. These assignments of error are overruled.
Plaintiffs also argue the trial court erred in granting summary judgment in favor of defendants regardless of the testimony from their expert witness because Dr. Roethling himself established the applicable standard of care in his deposition testimony. Plaintiffs' medical malpractice claim rests on an allegation that Dr. Roethling should have, but did not, use the Zavanelli maneuver during the delivery of Reagan and this was a breach of the applicable standard of care. In his deposition testimony, Dr. Roethling clearly states that the Zavanelli maneuver is an extremely desperate maneuver and was not indicated during the delivery of Reagan. Thus, Dr. Roethling did not testify that the Zavanelli maneuver was part of the applicable standard of care. This assignment of error is overruled.
Affirmed.
Judges McCULLOUGH and LEVINSON concur.
Report per Rule 30(e).