DARVELLA JONES, Plaintiff v. HARRELSON AND SMITH CONTRACTORS, LLC, a
North Carolina Corporation, and RODNEY S. TURNER d/b/a RODNEY S.
TURNER HOUSEMOVERS, Defendants

No. COA05-1183

(Filed 19 December 2006)

**1. Appeal and Error— appealability—claims pending at time of appeal—subsequent default judgment**

A motion to dismiss an appeal as interlocutory was denied where the motion was based on claims that were pending at the time of the appeal, but were afterwards the subject of a default judgment that left nothing to be resolved by the trial court as to that defendant.

**2. Appeal and Error— assignments of error—overly broad— specific record pages not referenced**

Appellant's broad assignments of error and her failure to reference the specific record pages to the order she purported to appeal from required dismissal of her appeal. Precedent about broadside assignments of error from summary judgment does not extend to appeals from a directed verdict and judgment n.o.v.

**3. Appeal and Error— assignments of error—reasons and argument not stated**

Plaintiff abandoned assignments of error by failing to state her reasons or argument or cite any supporting authority.

Judge Geer dissenting.

Appeal by plaintiff from order entered 13 April 2005 and judgment entered 10 May 2005 by Judge Jerry Braswell in Pamilco County Superior Court. Heard in the Court of Appeals 29 March 2006.

*William F. Ward, III, P.A., by William F. Ward, III, for plaintiff-appellant.*

*Hopf & Higley, P.A., by Donald S. Higley, II, for defendant-appellee Harrelson and Smith Contractors, LLC.*

*No brief filed for defendant-appellee Rodney S. Turner d/b/a Rodney S. Turner Housemovers.*

TYSON, Judge.

Darvella Jones ("plaintiff") appeals from order entered: (1) granting a directed verdict and dismissed plaintiff's unfair and deceptive trade practice claim; (2) granting Harrelson and Smith Contractors, LLC's ("defendant") motion for judgment notwithstanding the verdict on plaintiff's fraud and conversion claims; (3) denying plaintiff's request for specific findings of fact and conclusions of law; and (4) denying plaintiff's unfair and deceptive trade practice claim based upon plaintiff's conversion claim. We dismiss plaintiff's appeal.

## I. Background

In September 1999, Hurricane Floyd flooded portions of Eastern North Carolina. Following the hurricane, Pamlico County ("the County") instituted a flood acquisition program that allowed the County to purchase property located in the 100 year flood plain. The County purchased a house from Ray and Virginia Respers (the "Respers"), located in the flood plain at 439 Jones Road in Vandemere, North Carolina. The County paid approximately the appraised value of $45,000.00 for the house.

The flood acquisition program included a demolition and clearance project that required removal of improvements located in the flood plain. The County solicited bids for the removal and/or demolition of houses purchased, which were located in the flood plain. During the bidding process, defendant submitted a demolition bid in the amount of $60,797.00. The County awarded and executed a contract with defendant to demolish or remove a group of houses, including the Respers' former house.

The contract allowed defendant an option to salvage the houses scheduled for demolition, if the houses were severed from their current lots and relocated to lots outside the flood plain.

In August 2002, plaintiff purchased the Respers' house from defendant's agent John Harrelson ("Harrelson") for $500.00. Harrelson told plaintiff the house must be moved, but failed to disclose the County's contract requirement to relocate the house outside the flood plain. Plaintiff showed defendant a lot on Swan Point Road where she intended to relocate the house. Defendant recommended plaintiff contact defendant Rodney Turner ("Turner") to move the house. Plaintiff paid Turner $4,300.00 to move her house from Jones Road to Swan Point Road.

On or about 20 September 2002, Pamlico County inspectors learned that plaintiff's and two other houses had been relocated from their original lots to other lots located inside the flood plain. The North Carolina Division of Emergency Management gave the County three possible ways to resolve this issue: (1) the houses could be removed to another location outside of the flood plain; (2) the houses could be demolished; or (3) the houses could be removed from the buyout program by reimbursement of the County for the full amount it had paid to the original owners.

The County informed defendant that the houses relocated to other lots in the flood plain violated the terms of the demolition and clearance contract, explained the three choices, and gave defendant a deadline of 10 December 2002 to "complete corrective action." The County later threatened legal action against defendant if the provisions of the contract were not performed.

Defendant met with plaintiff and informed her the Swan Point lot did not comply with the County's contract. Defendant told plaintiff they had located a lot outside the flood plain on Water Street in Bayboro, North Carolina and offered to relocate her house at its expense. Defendant told plaintiff the lot owner had offered to sell the lot for $12,000.00, and defendant agreed to pay for the first two months. Plaintiff told defendant she did not want to live on Water Street. She contacted a realtor and began to make arrangements to purchase a lot in the Town of Reelsboro and move the house there. On 5 December 2002, plaintiff provided defendant with written certification that the Reelsboro lot was outside the flood plain.

On 6 December 2002, four days before the County's deadline, defendant hired Turner to move plaintiff's house from her Swan Point lot to the Water Street lot that defendant had rented at its own expense. Defendant acknowledged at trial that plaintiff never gave permission to move the house, but testified defendant was under pressure from the County to bring the contract into compliance by 10 December 2002. Plaintiff discovered her house had been moved on her drive to work.

On 9 December 2002, defendant sent a letter to the County which requested payment on its contract with the County and stated: "Please consider this request and its urgency because [defendant] has incurred considerable expense in trying to resolve these issues." The County was not satisfied because "the house was still in a potential

[180 N.C. App. 478 (2006)]

movable position, still had steel underneath of it, . . . and could still easily be moved back into the flood zone."

On 13 January 2003, defendant's attorney sent a letter to plaintiff's attorney, which requested, "that your client make satisfactory arrangements for governmental approval of the location of this house by securing approval at its current location, by moving it to an appropriate location, or otherwise, putting the controversy to rest before January 29, 2003." The letter also stated that "[a]bsent governmental approval, [defendant] must have the house removed by February 6, 2003. The time period between January 29, 2003, and February 6, 2003 will be used to raze the house if your client fails to make arrangements as set forth above." Plaintiff or her counsel failed to respond. Defendant demolished the house where it sat on the Water Street lot on 4 February 2003.

On 10 November 2003, plaintiff filed a complaint against defendant and defendant Rodney Turner d/b/a Rodney S. Turner Housemovers, asserting claims for fraud, negligent misrepresentation, conversion, and unfair and deceptive trade practices ("UDTP"). Defendant filed an answer on 20 January 2004. After Turner failed to file an answer and made no appearance, plaintiff obtained an entry of default on 2 March 2004.

Both plaintiff and defendant unsuccessfully moved for summary judgment, and the case was set for trial in February 2005. Defendant moved to bifurcate the compensatory and punitive damages stages of the trial, pursuant to N.C. Gen. Stat. § 1D-30. At the conclusion of plaintiff's evidence in the liability phase of the trial, defendant moved for a directed verdict on all issues. The trial court denied defendant's motion, and the case proceeded with defendant's evidence.

At the close of all the evidence, the trial court denied defendant's renewed motion for a directed verdict. At that time, plaintiff voluntarily dismissed her negligent misrepresentation claim, leaving her claims for fraud, conversion, and UDTP before the court. During the charge conference, however, the trial judge stated that he was revisiting his decision on defendant's motion for a directed verdict and granted that motion with respect to plaintiff's UDTP claim.

Plaintiff's claims for fraud and conversion were submitted to the jury. The verdict sheet returned by the jury read as follows:

We, the jury, by unanimous verdict, find as to the Issues as follows:

**JONES v. HARRELSON & SMITH CONTRS., LLC**

[180 N.C. App. 478 (2006)]

ISSUE ONE: Was the plaintiff damaged by the fraud of the Defendant? Answer: Yes

ISSUE TWO: What amount of damages is the Plaintiff entitled to recover? Answer: $31,815

ISSUE THREE: Did the Defendant convert the house relocated at Swan Point Road by the Plaintiff? Answer: Yes

ISSUE FOUR: Did the Plaintiff abandon the home? Answer: No

ISSUE FIVE: What amount is the Plaintiff entitled to recover for the damages for the conversion of the property of the Plaintiff? Answer: $30,000

Defendant moved: (1) for judgment notwithstanding the verdict ("JNOV") as to both claims; (2) for "judgment as a matter of law on the issue of punitive damages;" or (3) in the alternative, for a new trial on all issues. The trial court orally granted defendant's motion for JNOV, dismissing the fraud claim, but denied defendant's motion regarding the conversion claim. The court also entered judgment for defendant dismissing plaintiff's claim for punitive damages and denied both defendant's and plaintiff's motions for a new trial.

On 18 March 2005, plaintiff filed a motion pursuant to N.C.R. Civ. P. 52(a)(2) and requested the trial court make specific findings of fact and conclusions of law with respect to its rulings. The court denied plaintiff's motion and, instead, on 10 May 2005, entered a short judgment, specifying the jury's verdict, setting forth the court's rulings on the parties' various motions, and entered judgment in favor of plaintiff in the amount of $30,000.00. Plaintiff appeals.

## II. Defendant's Motion to Dismiss the Appeal

[1] Defendant has filed a motion to dismiss plaintiff's appeal as interlocutory on the grounds the default judgment against Turner was not entered until after plaintiff had appealed to this Court. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy" *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Defendant is correct that, at the time of plaintiff's notice of appeal, her appeal was interlocutory. Plaintiff's notice of appeal was filed 1 June 2005, and the default judgment was not entered until 8 December 2005. Plaintiff's claims against Turner were still pending at the time of her appeal.

## JONES v. HARRELSON & SMITH CONTRS., LLC

[180 N.C. App. 478 (2006)]

Although the appeal was interlocutory at the time it was filed, judgment has since been entered against Turner, leaving nothing to be resolved at the trial court. In such circumstances, we have ruled:

> the interests of justice would be furthered by hearing the appeal. All claims and judgments are final with respect to all the parties, and there is nothing left for the trial court to determine. Therefore, the rationale behind dismissing interlocutory appeals, the prevention of fragmentary and unnecessary appeals, does not apply in this case. In fact, any delay on our part would impede, rather than expedite, the efficient resolution of this matter.

*Tarrant v. Freeway Foods of Greensboro, Inc.*, 163 N.C. App. 504, 508, 593 S.E.2d 808, 811 (case not dismissed as interlocutory when plaintiff took voluntary dismissal of remaining claims pending in the trial court after giving notice of appeal but before case was heard in the Court of Appeals), *disc. rev. denied*, 358 N.C. 739, 605 S.E.2d 126 (2004). We deny defendant's motion to dismiss plaintiff's appeal as interlocutory.

### III. Assignments of Error Numbered 1 through 5

[2] Plaintiff's assignments of error numbered 1 through 5 state:

1. Did. the Trial Court, . . . err in . . . granting, . . . the defendant's prior Motion for Directed Verdict on the plaintiff's unfair and deceptive trade practice claim . . . ?

2. [D]id the Trial Court err:

    (a) by . . . granting defendant's Motion for Judgment Notwithstanding the Verdict as to the fraud claim and award of compensatory damages; and

    (b) by considering and allowing the defendant's Motion to dismiss plaintiff's claim for punitive damages for conversion[?]

3. Did the Trial Court err by refusing to make specific findings of fact and conclusions of law in its Judgment and order addressing the rulings on the defendant's Motion for Directed Verdict, Judgment Notwithstanding the verdict, and plaintiff's request to find the conversion by the defendants of plaintiff's house to be an unfair and deceptive trade practice after plaintiff had specifically moved, pursuant to North Carolina Rules of Civil Procedure 52(a)(2) and N.C. General Statute § 1D-50, for such findings?

4. Did the Trial Court err by refusing to find the conversion of plaintiff's house by the defendant, in commerce, to be an unfair and deceptive trade practice, as a matter of law, and refusing to award treble damages and consider plaintiff's request for attorney's fees?

5. Did the Trial Court err by refusing to award, in its judgment, interest from the date of the conversion of the plaintiff's house?

(Emphasis supplied).

## A. Appellate Rule Violations

The scope of appellate review is limited to issues presented by an assignment of error in the record on appeal. N.C.R. App. P. 10(a) (2006); *see State v. Trull*, 349 N.C. 428, 438, 509 S.E.2d 178, 186 (1998) (the appellant failed to preserve issue when the appellant failed to assign error), *cert. denied*, 528 U.S. 835, 145 L. Ed. 2d 80 (1999); *see also State v. Johnson*, 320 N.C. 746, 754, 360 S.E.2d 676, 681 (1987) (the appellant failed to preserve an issue without an assignment of error).

## 1. Failure to State Legal Basis for Error

Under Rule 10 of the North Carolina Rules of Appellate Procedure, "[e]ach assignment of error *shall*, . . . be confined to a single issue of law; and *shall* state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C.R. App. P. 10(c)(1) (2006) (emphasis supplied); *see State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217 (even though the defendant objected to the admission of certain evidence at trial, when he did not assign error to the admission of this evidence, the appellate court could not review this issue), *disc. rev. denied*, 358 N.C. 734, 601 S.E.2d 866 (2004). "[A]ssignments of error [that are] . . . broad, vague, and unspecific . . . do not comply with the North Carolina Rules of Appellate Procedure." *Walker v. Walker*, 174 N.C. App. 778, 781, 624 S.E.2d 639, 641 (2005) (quoting *In re Appeal of Lane Co.*, 153 N.C. App. 119, 123, 571 S.E.2d 224, 226-27 (2002)), *disc. rev. denied*, 360 N.C. 491, 632 S.E.2d 774 (2006); *see Stann v. Levine*, 180 N.C. App. 1, 5, 636 S.E.2d 214, 217 (2006) (The appellant's assignment of error violated Appellate Rule 10(c)(1) when it stated the trial court "commit[ted] reversible error by dismissing the action of the plaintiff for lack of jurisdiction."); *Kimmel v. Brett*, 92 N.C. App. 331, 335, 374 S.E.2d 435, 437 (1988) (where the plaintiff assigned error to the denial of her motion to set aside the jury's verdict without stating the grounds

upon which the errors were assigned, the plaintiff's exceptions were deemed abandoned); *State v. Hart*, 179 N.C. App. 30, 38-09, 633 S.E.2d 102, 107-08 (2006) (assignment of error that challenged testimony "otherwise violated the N.C. Rules of Evidence" was "broad, vague, and unspecific, and [failed] to identify the issues on appeal").

The dissenting opinion's reliance on *Ellis v. Williams*, 319 N.C. 413, 355 S.E.2d 479 (1987) is misplaced. In *Ellis*, our Supreme Court held that "Rule 10(a) of the North Carolina Rules of Appellate Procedure [does not require] a party against whom *summary judgment has been entered* to place exceptions and assignments of error into the record on appeal." 319 N.C. at 413, 355 S.E.2d at 480 (emphasis supplied). *Ellis* is inapplicable to plaintiff's appeal. Plaintiff appeals from a JNOV, and her appeal must comply with the Rules of Appellate Procedure. Neither this Court nor our Supreme Court has ever applied the reasoning in *Ellis* to appeals from directed verdicts or judgments notwithstanding the verdict. Plaintiff, as appellant, is not exempted from the Appellate Rule requirement to "state plainly, concisely and without argumentation the legal basis upon which error is assigned." N.C.R. App. P. 10(c)(1); *see Viar v. N.C. DOT*, 359 N.C. 400, 402, 610 S.E.2d 360, 360 (2005) (failure to follow the Rules of Appellate Procedure will subject an appeal to dismissal). "It is elementary that this Court is bound by holdings of the Supreme Court." *Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732, 468 S.E.2d 447, 450 (1996). The dissenting opinion erroneously extends precedent applicable only to a summary judgment to appeals from a directed verdict and judgment notwithstanding the verdict, and fails to cite any authority to support this extension.

### 2. Clear and Specific Record or Transcript References

Under Appellate Rule 10, "[a]n assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, *with clear and specific record or transcript references*." N.C.R. App. P. 10(c)(1) (emphasis supplied). In *Walsh v. Town of Wrightsville Beach Bd. of Alderman*, this Court dismissed the petitioner's appeal when the only assignment of error in the record on appeal failed to reference the record or transcript in violation of Rule 10(c)(1). 179 N.C. App. 97, 99, 632 S.E.2d 271, 272-73 (2006). An assignment of error violates Appellate Rule 10(c)(1) if it does not: (1) state "without argumentation;" (2) specify the "legal basis upon which error is assigned;" and (3) "direct the attention of the appellate court to the particular error about which the question is made, with clear and specific transcript references." *Bustle v. Rice*,

116 N.C. App. 658, 659, 449 S.E.2d 10, 10-11 (1994). The purpose of an assignment of error is to limit the scope of the appeal, N.C.R. App. P. 10(a), and to put the other party on notice of the issues to be presented. *Broderick v. Broderick*, 175 N.C. App. 501, 502-03, 623 S.E.2d 806, 807 (2006).

### 3. Substantial Compliance

The dissenting opinion's argument that substantial compliance precludes dismissal is misplaced and contrary to binding precedent. As noted above, "[i]t is elementary that this Court is bound by holdings of the Supreme Court." *Rogerson*, 121 N.C. App. at 732, 468 S.E.2d at 450.

"Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). "While . . . a panel of the Court of Appeals may disagree with, or even find error in, an opinion by a prior panel and may duly note its disagreement or point out that error in its opinion, the panel is bound by that prior decision until it is overturned by a higher court." *State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125, 134 (2004). The dissenting opinion's approach contradicts our Supreme Court's holding in *Viar*, and this Court's multiple precedents applying *Viar*.

"The North Carolina Rules of Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.' " *Viar*, 359 N.C. at 402, 610 S.E.2d at 360 (quoting *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999)). "It is not the role of the appellate courts . . . to create an appeal from an appellant," and that if violations of the Rules of Appellate Procedure are overlooked by invoking Rule 2, "the Rules become meaningless." *Stann*, 180 N.C. App. at 4, 636 S.E.2d at 216 (quoting *Viar*, 359 N.C. at 402, 610 S.E.2d at 361). " '[T]his Court may not review an appeal that violates the Rules of Appellate Procedure even though such violations neither impede our comprehension of the issues nor frustrate the appellate process.' " *Id.* (quoting *State v. Buchanan*, 170 N.C. App. 692, 695, 613 S.E.2d 356, 357 (2005)). "[T]he lack of an . . . assignment of error addressed to the issue attempted to be raised is a fatal defect." *State v. Smith*, 50 N.C. App. 188, 190, 272 S.E.2d 621, 623 (1980).

**JONES v. HARRELSON & SMITH CONTRS., LLC**

[180 N.C. App. 478 (2006)]

### B. Analysis

Plaintiff failed to state any legal basis for her assignments of error numbered 1 through 5, inclusive. N.C.R. App. P. 10 (c)(1); *see Hart*, 179 N.C. App. at 37, 633 S.E.2d at 107 (issue not addressed when assignment of error stated the challenged testimony "otherwise violated the N.C. Rules of Evidence" because the assignment of error was "broad, vague, unspecific, and [failed] to identify the issues on appeal"). Plaintiff's broad and vague assignments of error fail to comply with the Rules of Appellate Procedure. *Walker*, 174 N.C. App. at 781, 624 S.E.2d at 641; *see Walsh*, 179 N.C. App. at 98, 632 S.E.2d at 272-73 (appeal dismissed when the petitioner's only assignment of error in the record on appeal lacked references to the record or transcript).

In her assignments of error, plaintiff failed to cite any record page reference to the order she purports to appeal from and failed to comply with the Rules of Appellate Procedure. N.C.R. App. P. 10(c)(1).

Plaintiff's broad assignments of error and her failure to reference the specific record pages to the order she purports to appeal from require dismissal of her appeal. These assignments of error are not properly before us and are dismissed.

### IV. Assignments of Error Numbered 6 and 7

[3] Plaintiff's assignments of error numbered 6 and 7 state:

6. Did the Court err in precluding the plaintiff/owner, Darvella Jones, from testifying as to her opinion of the fair market value of her house on the date of conversion by the defendants?

7. Did the Trial Court err in precluding the building inspector, Skip Lee, from testifying as to his opinion of the value of the plaintiff's house, prior to the date of conversion by the defendants?

Plaintiff failed to argue or present any reasons or authority in support of these two assignments of error in her brief. "Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(6) (2006); *see State v. Walters*, 357 N.C. 68, 85-86, 588 S.E.2d 344, 354-55 (a party's assignment of error is deemed abandoned in the absence of citation to supporting authority), *cert. denied*, 540 U.S. 971, 157 L. Ed. 2d 320 (2003). Plaintiff abandoned her assignments of

error numbered 6 and 7 by failing to state her reasons or argument or cite to any authority in support thereof.

## V. Conclusion

Plaintiff's assignments of error numbered 1 though 5 are not properly before this Court pursuant to Appellate Rule 10(c). Plaintiff's assignments of error numbered 6 and 7 are not argued and are abandoned pursuant to Appellate Rule 28(b)(6). No assignment of error asserted in plaintiff's appeal is properly before us.

The dissenting opinion's arguments are the same arguments set forth in the dissenting opinion in *Stann*, 180 N.C. App. at 14, 636 S.E.2d at 222. This Court's majority opinion in *Stann* is binding upon later cases. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37 ("Where a panel of the Court of Appeals has decided the same issue . . . a subsequent panel of the same court is bound by that precedent."); *Jones*, 358 N.C. at 487, 598 S.E.2d at 134 ("the [subsequent] panel is bound by [the prior panel's] prior decision until it is overturned by a higher court."). The dissenting opinion fails to follow the binding precedent set forth in *Stann*. "[A]d hoc application of the rules, with inconsistent and arbitrary enforcement, could lead to allegations of favoritism for one counsel over another." *Stann*, 180 N.C. App. at 6-7, 636 S.E.2d at 217. We are bound to follow the binding precedent set forth in *Viar* and this Court's multiple cases applying *Viar*. Plaintiff failed to preserve any further issues for appellate review. Plaintiff's appeal is dismissed.

Dismissed.

Judge JACKSON concurs.

Judge GEER dissents by separate opinion.

GEER, Judge, dissenting.

Because I do not believe that dismissal is warranted in this case in light of *Ellis v. Williams*, 319 N.C. 413, 355 S.E.2d 479 (1987), I respectfully dissent. I would instead address the merits of this appeal, reverse the trial court's grant of JNOV as to the fraud claim, reinstate the jury verdict finding Harrelson and Smith Contractors, LLC ("H&S") liable for fraud in the amount of $31,815.00, reverse the trial court's entry of judgment as to Jones' unfair and deceptive trade practices ("UDTP") claim, and remand the case for entry of judgment

JONES v. HARRELSON & SMITH CONTRS., LLC

[180 N.C. App. 478 (2006)]

in the amount of $95,445.00 and for the court to consider, in its discretion, whether to award attorney's fees under N.C. Gen. Stat. § 75-16.1 (2005).

## Appellate Rules Violations

The majority opinion orders dismissal of Jones' appeal based on its conclusion that Jones' assignments of error fail to comply with Rule 10 of the Rules of Appellate Procedure. I cannot agree. In any event, any violation of Rule 10 is purely technical and cannot justify the sanction of dismissal under Rules 25 and 34 of the Rules of Appellate Procedure.

### A. Jones' Compliance with the Appellate Rules

The majority opinion states that Jones' assignments of error regarding the grant of the directed verdict on the UDTP claim and the entry of JNOV as to the fraud claim do not comply with Rule 10 because they fail to state the legal basis for Jones' contention that the trial court erred in making these rulings.[1] In doing so, the majority disregards the nature of the rulings that are being challenged. With respect to Jones' assignments of error that the trial court erred in granting H&S' motion for JNOV as to the fraud claim and in granting a directed verdict as to Jones' UDTP claim, the only legal ground that could be relied upon is that sufficient evidence existed for those claims to go to the jury. *See Alberti v. Manufactured Homes, Inc.*, 94 N.C. App. 754, 758, 381 S.E.2d 478, 480 (1989) ("Motions for directed verdict or judgment notwithstanding the verdict are properly granted only if the evidence is insufficient to support a verdict for the nonmovant as a matter of law."), *aff'd in part, reversed in part, and vacated in part on other grounds*, 329 N.C. 727, 407 S.E.2d 819 (1991).

Unlike other appeals that have been dismissed for inadequate assignments of error, there is no other legal ground that could be applicable with respect to these assignments of error. To dismiss Jones' appeal for failure to include language necessarily implicit in the assignment of error itself—or, in other words, for failing to state the obvious—is to elevate form over substance to an extent that our Supreme Court could not have intended in *Viar*.

---

1. This is not a case in which the appellant has argued in her brief a contention not contained in her assignment of error, such as occurred in *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 610 S.E.2d 360 (2005) (per curiam).

Indeed, the majority's approach cannot be reconciled with our Supreme Court's analysis of assignments of error with respect to *orders granting summary judgment*, in which the trial courts similarly weigh the sufficiency of the evidence to go to the jury. In *Ellis v. Williams*, 319 N.C. 413, 355 S.E.2d 479 (1987), the Supreme Court reversed the Court of Appeals when it dismissed an appeal because the appellant had failed to list any exceptions or assignments of error to a summary judgment order at all. The Supreme Court held:

> The purpose of summary judgment is to eliminate formal trial when the only questions involved are questions of law. Thus, although the enumeration of findings of fact and conclusions of law is technically unnecessary and generally inadvisable in summary judgment cases, summary judgment, by definition, is always based on two underlying questions of law: (1) whether there is a genuine issue of material fact and (2) whether the moving party is entitled to judgment. On appeal, review of summary judgment is necessarily limited to whether the trial court's conclusions as to these questions of law were correct ones. It would appear, then, that notice of appeal adequately apprises the opposing party and the appellate court of the limited issues to be reviewed. Exceptions and assignments of error add nothing.
>
> This result does not run afoul of the expressed purpose of Rule 10(a). Exceptions and assignments of error are required in most instances because they aid in sifting through the trial court record and fixing the potential scope of appellate review. We note that the appellate court must carefully examine the *entire record* in reviewing a grant of summary judgment. Because this is so, no preliminary "sifting" of the type contemplated by the rule need be performed. Also, as previously observed, the potential scope of review is already fixed; it is limited to the two questions of law automatically raised by summary judgment. Under these circumstances, exceptions and assignments of error serve no useful purpose. Were we to hold otherwise, plaintiffs would be required to submit assignments of error which merely restate the obvious; for example, "The trial court erred in concluding that no genuine issue of material fact existed and that defendants were entitled to summary judgment in their favor." At best, this is a superfluous formality.

*Id.* at 415-16, 355 S.E.2d at 481 (internal citations omitted). The Supreme Court reversed the Court of Appeals and remanded for this Court to review the case on its merits. *Id.* at 417, 355 S.E.2d at 482.

The majority opinion in this case likewise requires Jones to restate the obvious—a "superfluous formality," *id.* at 416, 355 S.E.2d at 481—when it dismisses this appeal simply because Jones failed to specify in her assignments of error that the evidence was sufficient to support her claims for fraud and UDTP. As with summary judgment decisions, a directed verdict or entry of JNOV involves *only a single question of law*: whether the evidence was sufficient to support the claim. I see no meaningful distinction between this case and *Ellis*. As this Court recently pointed out in *Nelson v. Hartford Underwriters Ins. Co.*, 177 N.C. App. 595, 602-03, 630 S.E.2d 221, 227 (2006) (applying *Ellis* to hold that appeal should not be dismissed when assignment of error challenged a summary judgment order without specifying a specific legal basis), we are bound to follow *Ellis* just as we are bound to follow *Viar*.

With respect to the prejudgment interest assignment of error, also condemned by the majority opinion, it is difficult to determine what is inadequate about that assignment of error. It reads: "Did the Trial Court err by refusing to award, in its judgment, interest from the date of the conversion of the plaintiff's house?" What more could be added? The majority opinion does not answer that question. Perhaps, Jones could have asserted that the failure to award prejudgment interest was contrary to the law set forth in *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 551 S.E.2d 546, *disc. review denied*, 354 N.C. 363, 557 S.E.2d 538-39 (2001), but our courts have never required the citation of legal authority in an assignment of error.

The majority opinion also states that "[p]laintiff's assignments of error failed to cite any record page reference to the order she purports to appeal from . . . ." The assignments of error as to the fraud and UDTP claim specifically refer to the appropriate page of the transcript at which the trial court orally rendered its ruling. *See* N.C.R. App. P. 10(c)(1) ("An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record *or transcript* references." (emphasis added)). Thus, as to the fraud and UDTP assignments of error, there has been no violation of the rules sufficient to warrant the extreme sanction of dismissal.

With respect to the prejudgment interest assignment of error, Jones does cite to the wrong page of the record—she mistakenly refers to a page other than that of the judgment setting forth the ruling as to prejudgment interest. Nevertheless, I would not refuse to address that assignment of error based on a typographical error when

**JONES v. HARRELSON & SMITH CONTRS., LLC**

[180 N.C. App. 478 (2006)]

it is clear that Jones intended to refer to the final judgment that appears three pages later in the record on appeal.

Finally, as to Jones' other assignments of error, I agree with the majority opinion that Jones has abandoned those relating to the omission of certain evidence by failing to bring those assignments of error forward in her brief. *See* N.C.R. App. P. 28(b)(6). With respect to the remaining assignments of error, I do not believe that those questions need to be resolved on appeal and, therefore, it is unnecessary to consider whether those assignments of error comply with the Appellate Rules.

B. <u>Substantial Compliance Precludes Dismissal</u>

Even if Jones could be viewed as having violated the appellate rules, the violations would at best be merely technical ones that in no way affect the ability of the appellee or this Court from addressing the questions that she has raised on appeal. Only three years ago, this Court wrote: "This Court has held that when a litigant exercises 'substantial compliance' with the appellate rules, *the appeal may not be dismissed for a technical violation of the rules.*" *Spencer v. Spencer*, 156 N.C. App. 1, 8, 575 S.E.2d 780, 785 (2003) (emphasis added). Today, in direct opposition to this proposition, certain panels of this Court hold that appeals must be dismissed even for technical violations of the rules. For the reasons stated in my dissent in *Stann v. Levine*, 180 N.C. App. 1, 14, 636 S.E.2d 214, 222 (2006), I do not believe that this approach is mandated—or even intended—by *Viar*.

I am not unmindful of the fact that the current state of affairs is the result, to a large extent, of the somewhat casual attitude adopted by many in the North Carolina Bar towards North Carolina's appellate courts and the Rules of Appellate Procedure. Apparently, not all attorneys necessarily experience the same degree of urgency with respect to state court appeals. This perspective is troubling and cannot be ignored. Nevertheless, as I indicated in my dissent in *Stann*, I would address violations of the rules that do not impact this Court's ability to decide issues properly preserved for review by imposing sanctions on counsel under Rules 25 and 34 of the Rules of Appellate Procedure. In addition to not punishing parties for the mistakes of their attorneys, this approach would also ensure that counsel for appellants and appellees alike are subjected to the same scrutiny.

I believe such an approach is mandated by Rules 25 and 34 of the Rules of Appellate Procedure. Rule 25(b) provides:

A court of the appellate division may, on its own initiative or motion of a party, impose a sanction against a party or attorney or both when the court determines that such party or attorney or both *substantially failed to comply with these appellate rules.* The court may impose sanctions of the type and in the manner prescribed by Rule 34 for frivolous appeals.

(Emphasis added.)

Dismissal of an appeal is the ultimate sanction and is authorized by Rule 34(b)(1) ("A court of the appellate division may impose one or more of the following sanctions: (1) dismissal of the appeal . . . ."). Yet, Rule 34 expressly limits the instances in which sanctions may be imposed:

(a) A court of the appellate division may, on its own initiative or motion of a party, impose a sanction against a party or attorney or both when the court determines that an appeal or any proceeding in an appeal was frivolous because of one or more of the following:

. . . .

(3) a petition, motion, brief, record, or other paper filed in the appeal was so grossly lacking in the requirements of propriety, *grossly violated appellate court rules,* or grossly disregarded the requirements of a fair presentation of the issues to the appellate court.

N.C.R. App. P. 34(a)(3) (emphasis added).

In short, the Appellate Rules themselves seem to limit this Court's ability to dismiss an appeal for rules violations to those when the party or attorney has "substantially failed to comply" or when there has been a gross violation of the rules. I do not believe that we should disregard the plain language of the appellate rules. Under those rules, because Jones has not substantially failed to comply and there has been no gross violation of the rules, I do not believe dismissal is a permissible sanction.

I would also point out that although the majority opinion states that the Rules of Appellate Procedure are mandatory, it is silent with respect to violations by the appellee. Under Rule 28(c), an appellee is not required to include a statement of facts in its brief, but if it does so, it must be "a non-argumentative summary of all material facts underlying the matter in controversy which are necessary to under-

stand all questions presented for review, supported by references to pages in the transcript of proceedings, the record on appeal, or exhibits, as the case may be." N.C.R. App. P. 28(b)(5). H&S' statement of facts is replete with argument—indeed, it is almost entirely argument. *See Stann*, 180 N.C. App. at 5, 636 S.E.2d at 216-17 (dismissing appeal in part because appellant included insufficient citations to the record in the statement of facts). Further, in the final section of H&S' brief, H&S urges this Court to grant it a new trial rather than simply reverse the trial court's rulings. H&S, however, in violation of Rule 10, did not cross-assign error to the trial court's denial of its motion for a new trial, and, in violation of Rule 28(b)(6), did not cite any authority at all supporting the grant of a new trial to H&S.

In sum, I do not believe that Jones has substantially violated the Rules of Appellate Procedure. I would address the merits and, for the reasons, set out below, I would reverse the trial court as to the fraud and UDTP claims.

### The Merits of the Appeal

#### A. Grant of JNOV on Fraud Claim

Jones' first argument is that the trial court erred in granting H&S' motion for JNOV on the fraud claim. A motion for JNOV is a renewal of an earlier motion for a directed verdict, and the standards of review are the same. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985). In considering a motion for directed verdict, "the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor." *Id.* at 369, 329 S.E.2d at 337-38.

"The essential elements of actionable fraud are: '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 793, 561 S.E.2d 905, 910 (2002) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). In this case, the parties centered their arguments around the third element of fraud, the intent to deceive. The required scienter for fraud is not present without both knowledge and an

## JONES v. HARRELSON & SMITH CONTRS., LLC

intent to deceive, manipulate, or defraud. *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988).

Here, when the evidence is viewed in the light most favorable to Jones, with all inferences drawn in her favor, both knowledge and intentional deception can be ascribed to H&S. There is no dispute that H&S had knowledge of the requirement that the houses be relocated outside the flood plain. Further, Jones showed Harrelson, a principal of H&S, where she planned to move the house, which would permit a jury to infer that H&S knew she intended to move the house within the flood plain. Jones offered evidence that, despite this knowledge, Harrelson said nothing about the requirement that the house be moved outside of the flood plain, but rather helped her find a house-mover to move the house to the new location.

Jones' evidence also indicated that once H&S learned that the county was aware that the salvaged house had not been moved outside the flood plain, H&S falsely told the county's agent that it had written contracts requiring the new owners to comply with the flood plain requirement. H&S then, according to Jones' evidence, created after-the-fact "contracts" designed to cover-up H&S' failure to disclose the flood plain requirement and failure to have written contracts. Finally, there was evidence in the record that H&S fabricated documents pertaining to other elements of its contract with the county and similarly misled two other purchasers of houses— evidence from which the jury could conclude that H&S had an overall scheme of deceit with respect to the contract with the county in order to maximize its profit. A jury could infer an intent to deceive from this evidence.

Apart from challenging the sufficiency of the evidence to prove an intent to deceive, H&S argues on appeal that the form signed by Jones, stating that it was her responsibility to move the house outside the flood plain, amended the parties' contract.[2] According to H&S, Jones was, therefore, limited to suing for breach of contract. H&S, however, cites no authority supporting its assumption that a plaintiff cannot sue for fraud if she has a breach of contract claim. The law is, in fact, to the contrary: a plaintiff may assert both claims, although she may be required to elect between her remedies prior to obtaining

---

2. This form was sent by H&S after the houses had been moved and after H&S had falsely sent a letter to the county's consulting firm stating: "We would like to assure you that the three owners that purchased the houses . . . *were informed with a written contract* that the houses were to be relocated above the 100-year floodplain and they were to accept all expense & responsibility." (Emphasis added.)

a verdict. *See First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 256-57, 507 S.E.2d 56, 65 (1998) (individual who had been fraudulently induced to purchase property may elect between a contract or a tort remedy).

Moreover, Jones contends that the form represented an attempt by H&S to cover up its fraud in the sales of the three houses, including Jones' house, and, therefore, is evidence of H&S' intent to deceive. Our courts have acknowledged that evidence insufficient to establish a breach of contract may nonetheless be admissible to prove that a contract was fraudulently induced or that the defendant committed unfair and deceptive trade practices. *See McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 400, 413, 466 S.E.2d 324, 333 (holding that evidence of the parties' negotiations was inadmissible on the breach of contract claim, but was admissible to prove fraud and unfair and deceptive trade practices), *disc. review denied*, 343 N.C. 307, 471 S.E.2d 72 (1996). It was for the jury to decide what inferences should be drawn from the form and what weight to give it. Accordingly, I would reverse the trial judge's entry of JNOV with respect to the jury's fraud verdict.

I disagree with Jones, however, as to what amount of damages should be awarded based on the conversion and fraud verdicts. Jones' fraud claim arose out of H&S' failure to inform Jones that she would need to move the house outside the flood plain, while her conversion claim arose out of H&S' removal and eventual destruction of her house. Jones argues that she is entitled to recover both the damages awarded for conversion and the damages awarded for fraud, for a total amount of $61,815.00. I cannot agree.

As to Jones' damages from the fraud, the trial court instructed the jury: "The plaintiff's actual damages are equal to the fair market value of the property . . . at the time that the plaintiff was defrauded." It then instructed the jury to award damages for conversion based on the "fair market value of the property at the time it was converted." It is apparent from these instructions that the jury's awards of $31,815.00 for fraud and $30,000.00 for conversion—each involving the fair market value of the same property at a different time—represent overlapping damages.

Jones is not entitled to recover the fair market value of the house twice. The doctrine of the election of remedies prevents " 'double redress for a single wrong.' " *United Labs., Inc. v. Kuykendall*, 335 N.C. 183, 191, 437 S.E.2d 374, 379 (1993) (quoting *Smith v. Gulf Oil*

*Corp.*, 239 N.C. 360, 368, 79 S.E.2d 880, 885 (1954)). "[T]he underlying basis" of this rule is "the maxim which forbids that one shall be twice vexed for one and the same cause." *Smith*, 239 N.C. at 368, 79 S.E.2d at 885. Accordingly, I would hold that Jones is entitled to judgment in the amount of $31,815.00, the greater of the two overlapping amounts entered by the jury.

## Unfair and Deceptive Trade Practices

Jones next assigned error to the trial court's entry of a directed verdict on Jones' UDTP claim. The basis of that ruling is not entirely clear since the trial judge stated that he was dismissing only Jones' independently pled UDTP claim, but would still allow Jones to argue, during the punitive damages stage of the bifurcated trial, that UDTP principles should apply in the calculation of damages, if the jury found liability on the basis of either fraud or conversion.

The court's ruling appears to reflect a misunderstanding of the nature of a Chapter 75 claim brought under N.C. Gen. Stat. § 75-1.1 (2005). A UDTP claim is a substantive claim, the remedy for which is treble damages. N.C. Gen. Stat. § 75-16 (2005). Chapter 75 is not a remedial scheme for other substantive claims. *See Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (noting that N.C. Gen. Stat. § 75-1.1 "was enacted to establish an effective private cause of action for aggrieved consumers in this State" (internal quotation marks omitted)). As this Court has stated, "[p]laintiffs can assert both UDTP violations under N.C. Gen. Stat. § 75-1.1 and fraud based on the same conduct or transaction. Successful plaintiffs may receive punitive damages or be awarded treble damages, but may not have both." *Compton v. Kirby*, 157 N.C. App. 1, 21, 577 S.E.2d 905, 918 (2003). The approach followed by the trial court, in this case, of dismissing the UDTP claim, but allowing counsel to argue it in connection with punitive damages, was in error.

With respect to the trial court's dismissal of Jones' substantive UDTP claim, it is well-settled that "a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred." *Bhatti*, 328 N.C. at 243, 400 S.E.2d at 442. *See also Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975) ("Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . ."); *State Props., LLC v. Ray*, 155 N.C. App. 65, 74, 574 S.E.2d 180, 187 (2002) ("[A] finding of fraud constitutes a violation of N.C. Gen. Stat. § 75-1.1."), *disc. review denied*, 356 N.C. 694,

577 S.E.2d 889 (2003). Once the plaintiff has proven fraud, "thereby establishing prima facie a violation of Chapter 75, the burden shifts to the defendant to prove that he is exempt from the provisions of N.C.G.S. § 75-1.1." *Bhatti*, 328 N.C. at 243-44, 400 S.E.2d at 442 (internal citation omitted).

Because the jury found in favor of Jones on the fraud claim and because H&S made no attempt to argue that it is exempt from the provisions of N.C. Gen. Stat. § 75-1.1, I would hold that Jones is entitled, under *Bhatti*, to recover treble damages under N.C. Gen. Stat. § 75-16. I would, therefore, remand for entry of judgment in favor of Jones on her UDTP claim and for trebling of her fraud damages. Upon remand, the trial court would also be required to consider whether to exercise its discretion to award attorney's fees under N.C. Gen. Stat. § 75-16.1. *Bhatti*, 328 N.C. at 247, 400 S.E.2d at 444.[3]

## Conclusion

In this case, the majority has chosen to dismiss this meritorious appeal because the appellant failed to state the obvious in her assignments of error. Even if this is viewed as a technical violation of the appellate rules, it cannot be deemed a lack of substantial compliance or a gross violation as required by Rules 25 and 34 of the Appellate Rules. Because I disagree with the majority opinion as to whether Jones violated the Rules of Appellate Procedure, and I disagree with the majority opinion's implicit conclusion that it has authority under those rules to dismiss an appeal that is in substantial compliance, this dissent represents a different scenario from that presented in *Steingress v. Steingress*, 350 N.C. 64, 67, 511 S.E.2d 298, 300 (1999), in which the Supreme Court limited its review under N.C. Gen. Stat. § 7A-30(2) (2005) to the dissent's assertion that the majority opinion erred in failing to exercise its discretion under Rule 2 of the Rules of Appellate Procedure.

---

3. Although Jones also challenged the trial court's entry of judgment on her punitive damages claim, Jones stated on appeal that she elected to receive treble damages under her UDTP claim rather than punitive damages. *See Compton*, 157 N.C. App. at 21, 577 S.E.2d at 918 ("Successful plaintiffs may receive punitive damages or be awarded treble damages [under Chapter 75], but may not have both."). Jones has, thereby, rendered the punitive damages issue moot. With respect to the prejudgment interest issue, I agree with H&S that the trial court properly applied *Lake Mary Ltd. P'ship* and awarded interest from the date the action was commenced as required by N.C. Gen. Stat. § 24-5(b) (2005).